IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK APPLE iPHONE IN A BLACK CASE CURRENTLY IN THE POSSESSION OF ATF | Case No. 4:24mj88-MAF |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Adam M. Bradley, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—described in Attachment A, which is currently in law enforcement possession, and the extraction from that property of the electronically stored information described in Attachment B.

2. I have been a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since February 2020. In February 2020, I attended the ATF's Special Agent Basic Training school (SABT) located at Federal Law Enforcement Training Center's (FLETC). I had previously completed the Criminal Investigator Training Program at FLETC in June 2016. Both courses were located at FLETC in Glynco, Georgia, for a combined period of twenty-seven

weeks. Prior to becoming a Special Agent with ATF, I worked for 3 years as a Special Agent with the United States Secret service and 6 years as a Patrol Officer for the Marietta Police Department located in Marietta, Georgia. I have received extensive formal and on-the-job training in the investigation and enforcement of federal criminal laws, including firearms and narcotics laws administered under Title 18, Title 21, and Title 26 of the United States Code.

3.   I have participated in numerous arrests where probable cause was based on violations of federal law, as well as numerous arrests where probable cause was based on violations of state law. I have participated in numerous interviews with criminals and others, including, but not limited to, criminal associates, spouses, family members, significant others (i.e., girlfriends, boyfriends, etc.), and friends, regarding the unlawful possession of firearms and/or narcotics. I have participated in investigations with other Special Agents and investigators who have received specialized training in computer forensics and the extraction of information from cellular devices. I know through my training and experience that cellular telephones can contain a substantial amount of information relevant to the investigation of a criminal case. Criminals who conspire or plan to commit criminal offenses, often communicate with each other prior to the time of the criminal offense and that communication is often about the logistics or the manner in which offenses will be carried out (for instance, in a drug sale, the seller

and buyer need to coordinate a physical meeting, and frequently use cell phones to arrange that). These same individuals will often communicate with each other after the offense, or to set up future transactions. Criminals will often facilitate this communication with each other using cellular telephones, either through verbal communication or text-based messaging. As such, their cellular telephones will oftentimes store contact information in call logs, contact lists, address books, speed dial lists, and in other areas of the telephone. To the extent that criminals use services such as instant messaging or text messages, these messages can sometimes be found within the memory of the physical cellular telephone or in inserted memory storage media.

4. The facts contained in this affidavit come from my personal observations, my training and experience, as well as information obtained from the reports of other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is more fully described in Attachment A and consists of a black Apple iPhone in a black case, hereinafter the "Device."

6. The Device is currently located in the Northern District of Florida, in the custody and control of the Bureau of Alcohol, Tobacco, Firearms, and

Explosives Tallahassee Field Office Evidence vault, located at 315 S Calhoun St. Suite 400, Tallahassee, FL 32301.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. § 922(o) related to the possession of an unregistered machine gun; and 21 U.S.C. §§ 841(a)(1) and 844 related to the possession and/or sale of marijuana will be found by searching the Device for the electronically stored data described in Attachment B.

## PROBABLE CAUSE

8. On January 15, 2024, around 8:45pm Leon County Sheriff Deputy Campbell stopped a Chevrolet Malibu 4 door sedan on W. Tennessee St. near White Dr. for speeding. Deputy Campbell approached the vehicle and could smell an odor of marijuana emitting from the vehicle as the driver rolled down the window. The driver exited the vehicle and identified himself at Deonte HUDGE with an expired Florida driver's permit. It was later verified HUDGE had a valid Georgia driver's license. HUDGE advised he only had marijuana and it was under his seat. Deputy Campbell began a probable cause search of the vehicle and located approximately six grams of marijuana under the seat in a clear plastic bag tied at the top. HUDGE did not have a medical marijuana card.

9. Upon further search of the vehicle, a green backpack was located on the back seat of the vehicle. Inside one of the compartments of the backpack was a

4

.45 caliber Glock 21 pistol SN: DDP000US with an extended magazine containing 26 rounds of .45 ACP RIP style hollow point ammunition. A flashlight/laser was attached under the frame. The firearm also contained a post-manufactured addition attached to the rear of slide of the firearm identified as a "Glock auto-sear" or "Glock switch" or machine gun conversion device "MCD" which is used to convert the firearm into a machinegun allowing the Glock to be fired automatically and by definition under 26 USC § 5845(b) a machinegun itself.

10. After locating the gun in the backpack, Deputy Campbell advised HUDGE he was being detained. While putting him in handcuffs, Deputy Campbell told HUDGE there was a firearm in the vehicle. Without being asked a question, HUDGE asked "What does it have on it?" His demeanor changed and he became agitated and upset. HUDGE was placed in a patrol vehicle and began yelling and stomping in the backseat. He exclaimed "no ... no ... no fucking way man" and stated at least three times "I got to know whats in that bookbag;" asked what kind of firearm it was and what the firearm looked like; and asked "does it have an extended clip? Is the clip extended?" and "what color was it?" Deputy Campbell answered "black" and he responded, "is it all black?"

11. The backpack also contained approximately 59 small clear bags (commonly used to distribute marijuana and hold marijuana purchased from a licensed marijuana retailer), rubber bands, and rolling papers.

12. Subsequent search of the trunk located a realistic black Glock pistol toy replica with a laser and a removable magazine that cycled when fired like a real pistol, including ejecting a casing. Two fake bullets were found loose in the same plastic bag the gun was found. Two other plastic toy guns were also found in the trunk; less realistic in color and shape.

13. HUDGE was read his Miranda rights and when asked where the gun came from, answered "I don't even know." When asked whose backpack that was, he answered the backpack was left by "somebody" who got into his car. He stated he was going to a house to meet friends and that he had just left from taking "somebody" (it is not clear if this was the same person who allegedly left the backpack in the car) to his house on Lancaster Drive. HUDGE did not know the name of the person he picked up who supposedly left the backpack in the car. HUDGE advised he purchased the small bags from a smoke shop but not the marijuana due to not having a marijuana card. HUDGE then stated his girlfriend makes and sells CBD treats and uses the bags for them. Deputy Campbell asked HUDGE what he purchased the bags for, and he stated "I don't know, I literally just have them." He later changed his answer to his girlfriend uses them to sell the treats she makes.

14. "Pembroke Pines PD" was engraved on the slide of the Glock. Pembroke Pines Police Department advised those specific make and model of

6

firearms were sold to officers and private retailers approximately 5 years ago and did not contain any aftermarket auto switches. A records check confirmed the firearm had not been reported stolen.

15. The Glock 21 is not registered as a machinegun to HUDGE in the National Firearms Registration and Transfer Record.

16. Your Affiant believes that the Device will contain communications indicating how HUDGE came into possession of the firearm, the machine gun conversion device (MCD)/Glock Switch, and the marijuana. While searching the vehicle, HUDGE appeared nervous while watching Deputy Campbell and attempted to facetime someone on his phone (the Device). During the stop, the Device received multiple texts messages.

17. Based on my training, experience, and conversations with other officers experienced in street-sales of firearms, machine gun conversion devices, and narcotics investigations, individuals who purchase or sell firearms and marijuana very commonly use electronic devices to coordinate those sales.

18. The Device was obtained from the Leon County Sherriff's Office and is currently in the lawful possession of ATF. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession law enforcement.

## Information about Cellphones

19. Because cellular telephones function as GPS devices, there is probable cause to believe that the Device contains data that would reveal its location during and after the crimes outlined herein. Moreover, there is probable cause to believe that searching the Device will enable law enforcement officers to identify the phone number assigned to the Device. In turn, that information can be used to seek a warrant commanding the cellular telephone provider to provide the government with historical location information for the Device.

20. There is probable cause to believe that the Device will contain call logs, text messages, and other information that will provide evidence of the above crimes, as well as show who was using the Device during and after the time frames that the crimes outlined herein were committed.

21. Based on my training and experience, I know that the Device is a "smartphone" which can allow a user to transfer photographs, videos, text communication, voicemail and contacts from one device to another. The Device has a built in camera capable of taking photographs and videos. The Device is able to access the World Wide Web or Internet. The Device is capable of storing telephone numbers and other contact information. In my training and experience, examining data stored on a device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

22. Based on my training, experience, and conversations with other officers experienced in firearms investigations, nearly all firearms purchasers will discuss the price of a firearm of a make, model, or caliber of a firearm, in the form of texts, photographs, receipts, and other such records which are inadvertently maintained.

23. In my training and experience, firearm purchasers often either intentionally or inadvertently maintain photographs, videos, or other such depictions of firearms or United States Currency. It may also be done as part of firearm transactions, where the seller will send the buyer a photograph of the firearm.

24. In my training and experience, photographs, text messages, emails, or other records which show connections between two members of a conspiracy are valuable pieces of evidence. The value of some such evidence may be immediately apparent (e.g. text messages or records discussing firearms purchased). However, even connections which seem innocuous at the time may be helpful in prosecuting co-conspirators when looked at from the end of an investigation (e.g. photographs which place two co-conspirators at the same place at the same time; or even simply evidence which shows that co-conspirators were friends or associates).

25. In my training and experience, financial records are valuable evidence in firearm purchases. Such records can help establish the lack of a legitimate

source of income (or the lack of a sufficient legitimate source of income), as well as records of expenditures and the movement of money. If a lack of sufficient legitimate income is shown compared to known assets and financial transactions, it allows a jury to infer that any unexplained monetary transfers or conspicuous consumption is evidence of, and the result of, illegal activity. In my training and experience, many people have financial applications on their phone, or use their phone to log in to their banks' websites to check account balances and pay bills.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

27. <u>Forensic evidence</u>. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. <u>Nature of examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

29. <u>Manner of execution</u>. Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the information/items described in Attachment B.

Respectfully submitted,

_____
Adam M. Bradley
Special Agent, ATF

Subscribed and sworn to before me on this 8th day of July 2024.

_____
MARTIN A. FITZPATRICK
United States Magistrate Judge

# ATTACHMENT A

The property to be searched is a black Apple iPhone in a black case, including any removable electronic storage media (e.g. micro-SD cards or SIM cards) found in the Device. The Device was seized from Deonte HUDGE and is currently located in the Northern District of Florida in the custody and control the Bureau of Alcohol, Tobacco, Firearms, and Explosives Tallahassee Field Office Evidence vault, located at 315 S Calhoun St. Suite 400, Tallahassee, FL 32301. Photographs of the Device follow:



This warrant authorizes the forensic examination of the Device and its components for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

The items to be seized are all of the records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922(o) related to the knowing possession of an unregistered machinegun; 21 U.S.C. 841(a)(1) related to the possession with intent to sell or sale of marijuana; and 21 U.S.C. § 844 related to the possession of marijuana, including:

  a. Communications involving the purchase or sale of firearms,[1] marijuana or other illegal drugs;

  b. Communications involving the theft of firearms, marijuana or other illegal drugs;

  c. Photographs or videos depicting firearms, marijuana or other illegal drugs;

  d. Location information, when relevant to show the illegal transfer of firearms, marijuana or other illegal drugs;

  e. Financial records related to the purchase or sale of firearms, marijuana or other illegal drugs;

  f. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or

---

[1] The term "firearms" as used herein includes a "Glock Switch" or machine gun conversion device "MCD."

1

deleted, including text messages, logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (including any removable storage medium found in such a device, such as a micro-SD card or a SIM card).

This warrant authorizes a review of electronically stored information, communications, other records and information obtained pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, ATF may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.